UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE 1, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1:24-CV-217-ACL |
| | ) | |
| DAVID McKNIGHT, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

This matter is before the Court on Defendant McKnight's Motion to Permit Remote Testimony at Trial Pursuant to Federal Rule of Civil Procedure 43(a) (Doc. 95). McKnight is in federal custody. He requests that he be allowed to appear and testify at trial by "real-time, two-way, audio-video transmission … using the Bureau of Prisons' [(BOPs')] video-teleconferencing capability," including safeguards that ensure "1) accurate identification of the witness; 2) protection against improper influence; and 3) reliable transmission and a clear record." Plaintiffs filed a Memorandum in Opposition (Doc. 101) to the Motion.[1]

McKnight asserts there is good cause and compelling circumstances to allow him to testify at his trial remotely in that he "is currently accruing time that counts toward a reduction in his sentence under the First Step Act." (Doc. 95 at 2.) He reports that he is presently earning credit for spending time in directed programming and that if he is outside the confines of the facility, "he is considered 'not in earning status' and will not accrue the same reduction." *Id.* Although McKnight did not specify what programming he is

[1] Plaintiffs' Motion for Writ of Habeas Corpus Ad Testificandum (Doc. 102) will be addressed separately.

participating in that makes him eligible for a sentence reduction, or the number of credits he has earned to date, he noted that correctional officers at the facility where he is being housed confirmed that inmates do not earn First Step Act credit "while out of the facility." *Id*.

Under the Act, prisoners who successfully complete recidivism reduction programming are eligible to earn up to 10 days of time credits for every 30 days of program participation. Minimum and low-risk prisoners who successfully completed recidivism reduction or productive activities and whose assessed risk of recidivism has not increased over two consecutive assessments are eligible to earn up to an additional five days of time credits for every 30 days of successful participation. *See* 18 U.S.C.A. § 3632. In *White v. Warden of Fed. Corr. Inst. - Cumberland*, the Fourth Circuit observed that "Congress made clear that time credits have to be *earned* by successful *participation* in programming, and we are not free to award such credits for periods during which a prisoner does not satisfy Congress's requirement." 164 F.4th 326, 332 (4th Cir. 2026) (emphasis in original).

Plaintiffs argue that McKnight's "claimed loss of First Step Act credits is speculative and unquantified" in that he fails to state how long the transport between the BOP facility and the courthouse might take, the "precise number of program days missed, or any concrete calculation of credits purportedly lost, nor does he show that any such temporary pause in accrual would be irreparable or atypical for an incarcerated party who must attend a federal trial." (Doc. 101 at 2.) Plaintiffs note that McKnight's custodial status "is a self-incurred collateral circumstance, not the kind of sudden accident, illness, or truly extraordinary development contemplated by Rule 43(a)'s 'compelling circumstances.'" *Id*. Furthermore, Plaintiffs assert that they would be prejudiced if McKnight were allowed to testify remotely

because it would negatively impact cross-examination by Plaintiffs' counsel, as well as impair the ability of jurors to observe and assess McKnight's demeanor and credibility. Plaintiffs also note that 1) courts routinely coordinate the transportation and production of incarcerated parties and witnesses, 2) McKnight has not articulated adequate safeguards for ensuring a reliable video transmission along with prevention of potential off-camera coaching, or 3) contingency plans for technical failures. They note that the BOP's videoconferencing system was used during McKnight's recent deposition which started two hours late due to technical difficulties and then was "marred by persistent audio problems." *Id*. at 4.

**Discussion**

Both sides in a trial have the right to call witnesses, and the power to compel witness testimony is essential to our system of justice. *See Blair v. United States,* 250 U.S. 273, 281–82 (1919) ("[T]he giving of testimony and the attendance upon court or grand jury in order to testify are public duties ... necessary to the administration of justice....").

Pursuant to Federal Rule of Civil Procedure 43(a), "[a]t trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." However, the rule also provides that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). Thus, the decision regarding whether to allow testimony by videoconference falls within the Court's discretion. *See Thomas v. Anderson*, 912 F.3d 971, 977 (7th Cir. 2018) ("[U]nder Rule 43(a), the judge has discretion

to allow live testimony by video for 'good cause in compelling circumstances and with appropriate safeguards.'"). The Court's discretion on this question is supplemented by its "wide latitude in determining the manner in which evidence is to be presented" under the Federal Rules of Evidence. *Parkhurst v. Belt*, 567 F.3d 995, 1002 (8th Cir. 2009) (citing Fed. R. Evid. 611(a)).

While technology continues to improve, conducting a trial by videoconference is not the same as conducting a trial where witnesses testify in the same room as the factfinders. *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005). "'[V]irtual reality is rarely a substitute for actual presence and ... even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it.' " *Id.* (quoting *United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001)). Certain features of testimony useful to evaluating credibility and persuasiveness, such as "'[t]he immediacy of a living person'" can be lost with video technology, and the "'ability to observe demeanor, central to the fact-finding process, may be lessened[.]'" *Id.* (citations omitted).

Advances in technology minimize the above concerns. The near-instantaneous transmission of video testimony through current technology permits "the jury to see the live witness along with 'his hesitation, his doubts, his variations of language, his confidence or precipitancy, [and] his calmness or consideration[.]" *In re Vioxx Prods. Litig.*, 439 F. Supp. 2d 640, 644 (E.D. La. 2006) (citations omitted). Given the speed and clarity of modern videoconference technology, where good cause and compelling circumstances are shown, such testimony "satisfies the goals of live, in-person testimony and avoids the short-comings of deposition testimony." *Id.*

"Courts most frequently allow remote testimony in special circumstances, such as where a vital witness would be endangered or made uncomfortable by appearing in a courtroom." *Eller v. Trans Union, LLC*, 739 F.3d 467, 478 (10th Cir. 2013) (citing *Parkhurst*, 567 F.3d at 997 (child victim of sexual abuse). *See Jennings v. Bradley*, 419 Fed. App'x 594, 598 (6th Cir. 2011) (unpublished) (three witnesses posed security threats while fourth witness would be deprived of necessary mental health support if forced to testify in person)).

The Advisory Committee Notes to Rule 43(a) address travel inconvenience for witnesses. After observing the "good cause in compelling circumstances" requirement, the advisory committee notes that "[t]ransmission cannot be justified merely by showing that it is inconvenient for the witness to attend the trial." Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment. Rather, "[t]he most persuasive showings of good cause and compelling circumstances are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." *Id.* Notably, the use of "[c]ontemporaneous transmission *may be better than an attempt to reschedule the trial*[.]" *Id.* (emphasis added).

The question of whether good cause and compelling circumstances exist such that remote testimony should be permitted is a case-specific question. Turning to the facts of this case, the Court notes that McKnight is not only a witness in this matter *he is a party*. The Court recognizes McKnight likely will not earn credit under the First Step Act while he is away as he will be unable to continue participation in programs in which he may be enrolled. This potential loss was reasonably foreseeable when McKnight's criminal case

was resolved. More importantly, the Court finds the preference for live testimony to the jurors, the parties, and the Court far outweighs any of the concerns cited by McKnight. This is especially true considering the technical difficulties previously experienced by the parties during McKnight's deposition. Live testimony eliminates the operational stability concerns associated with the use of videoconferencing equipment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Permit Remote Testimony at Trial Pursuant to Federal Rule of Civil Procedure 43(a) (Doc. 95) is **denied**.

Dated this 4th day of September, 2026.

***/s/ Abbie Crites-Leoni***
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE